**YOUNG et v W E HUTTON & CO**

Ohio Appeals, 1st Dist, Hamilton Co

Decided Feb 3, 1936

Brown & Sanger, Toledo, Tyler, Wilson & Rhinefort, Toledo, Fraser, Effler, Shumaker & Winn, Toledo, and Waite, Schindel & Bayless, Cincinnati, for plaintiffs in error.

Peck, Shaffer & Williams, Cincinnati, for defendant in error.

**OPINION**

By ROSS, PJ.

This is a proceeding in error to reverse a judgment of the Common Pleas Court of Hamilton County, rendered by that court in favor of the defendant therein, pursu-

ant to a motion for judgment at the close of the case of the plaintiff.

The parties will be referred to as they appeared in the trial court.

The decedent of plaintiff, Henry W. Wilhelm, a man of some seventy-five years of age, was taken to the Toledo Hospital October 21, 1928 and died November 1, 1928, at 8:45 P. M., from myocarditis.

A power of attorney, dated October 23, 1928, bearing the decedent's signature by "X" mark was used by his nephew, Lorraine Wilhelm on October 29, 30 and November 2, 1928 to secure entrance to the safety deposit box of decedent. The instrument provided for revocation.

On November 2 and 3, 1928 certain stock, represented by certificates taken from such safety deposit box was used by the defendant on the New York Stock Exchange. All the certificates bore indorsements of November 1, 1928, signed Henry W. Wilhelm by Lorraine Wilhelm, attorney in fact, and were accompanied by a power of attorney to Lorraine Wilhelm, duly witnessed and signed Henry W. Wilhelm "X" his mark.

The certificates were all received from V. H. Thornburgh or Thornburgh & Company. The indorsements were witnessed by Thornburgh. The proceeds of the sale of all the stock was paid to Thornburgh & Company. Broker's commission was deducted from the gross proceeds.

The defendant guaranteed the indorsements upon the certificates and new certificates were issued to it.

The proceeds of the sale of stock was diverted by Lorraine Wilhelm from the estate of his uncle Henry W. Wilhelm.

The action is for conversion of the stock.

By consent, trial was had to the court.

Motion for judgment for the defendant, made at the close of the plaintiff's case was granted.

If the evidence preponderated in favor of the defendant, the court was justified in its judgment. **Euclid Arcade Bldg. Co. v Stahl Co., 99 Oh St, 47, 49:**

"We see no reason why, at the close of plaintiff's case, if the evidence of the plaintiff preponderates in favor of the defendant, the case should proceed further, incurring useless expense and for an unavailing purpose unless the defendant were unfortunate enough to offer testimony that would bolster up his opponent's case."

The contentions of plaintiff are that the deceased by reason of disease and his

proximity to death was incapable of understanding the nature of the instrument claimed to bear his signature by mark, that such signature was a forgery, and that the scope of the power of attorney did not include a power to sell stock.

The contentions of the defendant are that the defendant was a broker, a mere conduit for the sale of the stock and was a bona fide purchaser for value. We are not materially aided in our consideration of the case by such alternative positions assumed by the parties.

We have read with interest the statement of the case by the trial court, Judge Stanley Struble, and an examination of the record causes us to conclude that the court fully and correctly analyzed the evidence and applied the law germane to the issues raised by the pleadings. The decisive factors in the case are principally confined to the evidence.

The court found that there was no evidence sustaining the charge of forgery and that the evidence failed to sustain the claim of the plaintiff that the defendant did not have sufficient mentality to validate the power of attorney. We approve this finding.

The serious question presented was the effect of the death of Wilhelm prior to the completion of the sale of the stock. Again, we follow the trial court in its conclusions upon the evidence and the law. We quote from the statement by the court:

"Now having held this power of attorney valid the next question is a fundamental matter too, and that is as to the date of the transfer and assignment of these stock certificates. In considering this question it must be noted that on the face of this power of attorney appears this language: 'This power of attorney can be revoked by me at any time I shall desire upon giving notice of my wishes to the said Lorraine Wilhelm. In the event of my death it shall be automatically revoked.' That statement appearing on the face of the power of attorney would put all persons dealing with the attorney in fact, Lorraine Wilhelm upon notice and inquiry as to whether such power of attorney had been revoked. There is no proof or claim in this case that this power of attorney had been revoked by written notice served upon Lorraine Wilhelm. Proof in the case is that the decedent died at eight forty-five P. M., November first, 1928. From the moment of the death of the decedent Lorraine Wilhelm could not in any way bind

the estate of the decedent. Persons dealing with Lorraine Wilhelm, after this power of attorney had been revoked by written notice, or death of the decedent, would get no rights as against the decedent or his estate.

"The date on the stock certificates is November first, 1928. There is no proof in this case that Lorraine Wilhelm, acting under this power of attorney, did not execute the assignment and transfer and deliver the stock certificates to Thornburgh on any other date than November first, 1928, the date appearing on the certificates. If the execution of the transfer of the certificates was on November first, 1928 and the delivery of the certificates to Thornburgh was after the death of the decedent that might invalidate the transfer, but from the proof in this case the court must conclude that this transfer, this assignment of these stock certificates was executed on the first and delivered to Thornburgh on the first day of November, 1928, and before the death of the decedent. That being so the transaction with Thornburgh was closed on the first of November. What occurred afterwards is of no particular importance. The transaction was finished before the revocation of the power of attorney by the death of the decedent. That being the case it would be just as binding, although executed by the attorney in fact, as if the decedent himself on the first of November had executed this transaction. The transaction having been closed, I do not think it is of importance in passing upon this motion to consider what took place in Hutton's office, what they did, or what was done by the transfer agent. All of these matters relate merely to steps that were essential to be taken in carrying through the transaction that had taken place on November first, 1928."

Secs 8673-7 and 8673-8 GC in the Uniform Stock Transfer Act, as adopted in Ohio, sustain the validity of the transfer even in the event of the death of the lawful holder, if the certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful. The facts bring the case within the purview of the statutes noted.

It is urged in the briefs that the state of Delaware has not adopted the Uniform Stock Transfer Act, and, hence, the Ohio law is inapplicable. The statutes of Delaware were not pleaded and are not before

us. The law of Ohio is presumed to apply in the absence of a pleading of a foreign statute. That law in Ohio is statutory. The Ohio statutes apply. **Mendelson v Mendelson, 123 Oh St, 11, at 13:**

" 'Where an action or defense depends upon the law of another state, and that law has not been proved, the court will presume it to be the same as that which is in force in its own jurisdiction.' 2 Sutherland on Statutory Construction, Lewis' Second Ed., page 610, etc.; **Erie Rd. Co. v Welsh, 89 Oh St, 105, — NE, 189."**

See also: **31 Ohio Jur., 548.**

It is further asserted that the power of attorney is limited in scope and did not extend far enough to justify a sale of the decedent's stock by the attorney in fact.

We are cited to the case of Hodge v Combs, 1 Black, 192, (66 U. S. 192). The syllabus of that case is as follows:

"1. If one person constitutes another his 'general and special agent to do and transact all manner of business,' this does not necessarily authorize the agent to sell stocks or other property of the principal.

"2. If the agent sells public stocks under such vague and indefinite authority, it is at least necesary for the purchaser, when his title comes in controversy, to show that he bought in good faith and paid a fair consideration."

The power of attorney in Hodge v Combs, supra, contained this language:

" 'I, Leslie Combs, do hereby constitute and appoint James Love, of Texas, my general and special agent to do and transact all manner of business in which I may be interested there, hereby ratifying and confirming the acts of my agent as fully as if done by myself.

" 'Witness my hand and seal, the 13th day of February, 1840.

'Leslie Combs. (Seal).' "

Even if the power of attorney herein in question is as limited in scope as that considered in Hodge v Combs, and we think it is not, there is no suggestion in the record that the defendant was guilty of any fraud and on the contrary the evidence of the plaintiff shows that Hutton & Company acted in good faith, fully acounted for the entire proceds of the sale of the stock, deducting only a small commission, and that they were wholly ignorant of anything

indicating that a fraud was being perpetrated upon the estate of the decedent; of whose death they were also entirely ignorant. We cannot justify a remand of the case for a full defense which has been established by the evidence of the plaintiff.

There are many collateral questions raised by the briefs of counsel which we find it unnecessary to consider in that we approve the conclusions of the trial court upon the evidence and the law applicable.

The judgment of the Common Pleas Court is affirmed.

MATTHEWS and HAMILTON, JJ, concur.